## INTERPRETATION OF CONTRACTS.

Circuit Court of Cuyahoga County.

LOUIS J. LEE v. F. W. BENEDICT.

Decided, November 18, 1907.

*Trials—Prejudice Caused by Reference to Judgment Below Cured by Explanation that Judgment was by Default—Contracts—Duty of Court to Interpret a Written Contract in the Light of the Evidence.*

1. Any error caused by plaintiff, while on the witness stand, speaking of the judgment secured in the justice court, is cured by the court explaining in its charge to the jury that no trial was had in the justice court and that the judgment there was by default.
2. It is the duty of the court to interpret a written contract; and where the evidence makes it clear that the parties did not intend to make the contract which the ordinary meaning given to the language used would indicate, it is not error for the court to so interpret it as to give it the meaning intended.

*J. A. Thompson,* for plaintiff in error.
*Samuel Burgert* and *George A. Groot,* contra.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Suit was brought in the court of common pleas by Benedict against Lee. The terms plaintiff and defendant as used in this opinion refer to the parties as they were in the court below. In the plaintiff's petition he avers that:

"On or about the —— day of ——, 1903, he and the defendant entered into a verbal agreement whereby the defendant agreed to and did employ said plaintiff to do and perform certain duties, which duties consisted of selling and leasing properties listed with the defendant, in the city of Cleveland, Ohio, and for such services the defendant agreed to pay the plaintiff a fixed salary and 25% and 33-1/3% of the commission so received by the defendant on all properties sold and leased by plaintiff for the defendant; an itemized account of which is hereto attached, marked Exhibit A., and made a part of this petition."

The account attached is a long one and purports to set out leases and sales made, upon which the plaintiff was to receive

commissions, with the amount of commission received by the defendant and the part thereof to which the plaintiff claims to be entitled, and a statement of payments which had been made by the defendant to the plaintiff. To this petition the defendant answered, that he is in the business of leasing business blocks, etc., that he receives as compensation certain commissions, that the plaintiff entered his employ on the 17th day of March, 1903, his proposed duties in said employment being to assist in the transaction of the aforesaid business, for which he was to receive a salary of $40 per month, and a certain commission on business transacted through him. Defendant says that plaintiff continued in his employment until July 10, 1905. Defendant says that he paid the plaintiff, from time to time, for his services so rendered, the sums of money set forth in the itemized statement in plaintiff's petition contained. Defendant now says that the total amount paid, was $539.19 in excess of the amount due from the defendant to the plaintiff for his labor and services performed as aforesaid, and he prays for judgment against the plaintiff for that sum.

. Plaintiff replied to this answer, denying that he had received anything in excess of the amount admitted, but that there was still due him the amount prayed for in his petition, which was $226.29, with interest from the 11th day of July, 1905. The result was a verdict for the plaintiff, and by proper proceedings the case is here for review on error, a bill of exceptions being filed, containing all the evidence offered on the trial of the case.

This suit was first brought before a justice of the peace and was appealed to the court of common pleas. The plaintiff in giving his testimony in the last named court said to the jury that he recovered judgment before the justice. The way in which he came to say this was as follows: The plaintiff was being examined, and was asked, after having stated that he had brought about certain deals for which he had received a compensation, "and the balance is how much?" To which he answered: "Two hundred and twenty-six dollars and twenty-nine cents." The following question was then put to him: "With interest from when?" To which he answered: "I got a judgment in the lower

court.'' At this point the witness was stopped and counsel for the defendant said: ''I object to the statement of the witness.''

After some colloquy between the court and counsel, the court said: ''Proceed, I will take care of that at the proper time.'' Beyond this, there was no statement as to who got a judgment before the justice, and in the charge the court, speaking of this matter, said to the jury:

''When Mr. Benedict was on the stand he was asked something and he answered that judgment in the other trial, or words to that effect, was obtained at a certain time. I thought at the time that it was very prejudicial and ordinarily it is, but in view of what I am going to say to the jury, I don't think that will hurt in any way what I am going to say—that won't hurt anybody. It is true that, for instance, if a petition comes in here, and the lawyer who draws it up, sets up in the petition that judgment in the case below was for the plaintiff or defendant, we would strike it off, or, perhaps, require him to pay costs before another action is brought and so, if a lawyer says in the opening of his case, judgment was for plaintiff or defendant, the case will be continued probably, and disregarded as utterly wrong, if he should say to the jury that the case below was won by defendant or plaintiff, and you can see that it is perfectly true, because the parties are both entitled to have it tried here as though it were never tried before. But the transcript in this case shows what was done in the court below, and reads in this way: 'July 31, 1905. 10 A. M. Case called, plaintiff in court; defendant came not for an hour thereafter; Samuel Burgert sworn and examined on behalf of the plaintiff. No defense. Whereupon the judgment was rendered for plaintiff.' So, gentlemen, that having been the history of the case, and I now tell you in substance the case never was tried before at all; defendant was not there, so I think that cures any injury done by the statement, and I now think that Mr. Benedict did not at all mean to prejudice you in any way or do anything he ought not to do; so that is out of your consideration. This is the first time the case has ever been tried, and I do not consider Mr. Benedict has been guilty of any impropriety and will bring in the verdict you think the facts will warrant.''

In view of this language of the court in its charge to the jury we feel that there could have been no possible prejudice to the defendant by this statement made by the plaintiff. The jury were

distinctly told that they were not to consider it; they were told
further that the defendant was not in the justice court and that
they were in no wise to be affected by that statement, evidently
inadvertently made by the plaintiff, and not directly in response
to any question put to him.  The question being from what time
he was to recover interest, he probably expected to answer that in
the court below he got interest from a given date.  Of course
this would be improper, but in view of the fact that the defend-
ant never appeared in the justice court and that there had never
been any trial before the justice of the peace to determine what
defense there could be to this case, we think there should be no
reversal on account of this action of the witness and of the court.

Upon the trial it developed that the plaintiff entered the em-
ploy of the defendant under a written contract and not under a
verbal agreement, as set out in the petition; that he continued for
a time to work under this written contract, and thereafter, that
he worked under a new verbal contract entered into between the
parties.  There is no question as to what rate of compensation
the plaintiff was entitled to recover under the verbal contract.
There is, however, a dispute as to when the change was made,
from the written to the verbal contract, and since under the
verbal contract the salary was to be at a higher rate than under
the written contract, as is agreed on both sides, and the commis-
sions were to be at a rate about which there is no dispute under
the verbal contract, to-wit, one-third of such commissions as the
defendant should receive from his clients, the question in dispute
and tried out before the jury was as to the commissions which
the plaintiff was entitled to receive while working under the writ-
ten contract, as well as the length of time that he worked under
that contract, and perhaps there was some dispute as to the
amount which had been paid to the plaintiff by the defendant,
the defendant claiming he had paid somewhat more than was
admitted by the plaintiff.

There was one item amounting to $60 which was allowed by the
jury to the plaintiff and which the court, upon motion for new
trial, required the plaintiff to remit as a condition for the affirm-
ance of the judgment.  The plaintiff thereupon remitted this

item of $60 and, as so reduced, the court overruled the motion for a new trial and entered judgment upon the verdict.

It is urged that this judgment, even with the remittutur, was erroneous, unless the defendant consented to the remittitur.

We know of no authority for such a proposition, nor do we know of any reason for such a proposition. The practice for so long a time that the memory of man runneth not to the contrary has been to enter the judgment upon the plaintiff remitting such an amount as the court thinks should be remitted, without reference as to whether such judgment is satisfactory to the defendant or not. There was no error in this regard, provided the evidence was such as to justify the jury in finding the amount, after deducting the remittitur.

It is said further, however, that the court erred in its charge to the jury in undertaking to construe the written contract. That written contract reads, so far as it need be considered in connection with the question now under consideration, as follows:

"For said services, Louis J. Lee hereby guarantees to F. W. Benedict a stated monthly salary of $40, together with a commission, the percentage of which is hereinafter specified.

"It is understood that said Benedict shall participate in the brokerage commission aforesaid to the extent of one-half of one per cent. of said commission."

The language used by the court in reference to this is as follows:

"There is one other thing I must speak to you about in this contract. The language of the contract is, that Mr. Benedict shall be entitled to brokerage commission to the extent of one-half of one per cent. of said commission. It is always for the court to say what the contract means, also for the court to tell the jury what a contract means. But the court, in this case, is of opinion that these parties unquestionably, by their conduct and their dealings with each other—I don't think any other conclusion than this could be drawn from the testimony of these two gentlemen on the stand, that their construction of this contract was, that the first period Mr. Benedict was to get one-fourth of the commissions and during the subsequent period one-third; that manifestly was the construction upon it, and there is one question, to find out what these gentlemen meant, or we want to know what these gentlemen intended to do, and I think it is perfectly

plain that what they intended to do was, that at the beginning, Mr. Benedict should receive one-fourth of the commission in certain cases, and subsequently one-third.''

The court was clearly right that no lawyer would say that the words used, to-wit, ''one-half of one per cent '' of said commission meant one-quarter of the entire commission. It is not only true that no lawyer would put that construction upon them, but no other man who understands the meaning of the English language would put that construction upon these words used alone, and without something to aid him in determining that the parties meant what the court said they clearly by their conduct showed they did mean, and by their conduct thus construed the contract to mean. The evidence is substantially to the effect that the commission received by the defendant for his leases and sales was 2% to start with. It is almost inconceivable that the parties meant that the plaintiff was to receive but one-half of one per cent. of this 2%. That they did not mean this is fairly inferable from the way in which the evidence shows the defendant paid the plaintiff from time to time; but it seems to us to be rendered absolutely certain by the testimony of the defendant himself, where, in testifying as to a certain transaction, he is asked: ''You remember the transaction of the Pleasant Hill Land Company?'' (Answer) ''Yes, sir.'' ''Your commission in that was $300?'' (Answer) ''Yes, sir.'' ''He was entitled to $75?'' (Answer) ''No, sir.'' ''What was he entitled to?'' (Answer) ''He had very little to do with that deal, and we had a mutual understanding to the effect I would allow him a lump sum of $60.'' ''Then, without that mutual understanding he would be entitled to $75?'' (Answer) ''If we did not have that understanding, yes.'' ''That is what I asked.'' (Answer) ''Sure.'' ''You had some little dispute about a commission that was coming to him on that—the $75?'' (Answer) ''Yes, sir.'' ''And you finally settled the matter by giving him $60, is that it?'' (Answer) ''That is it exactly.''

Now that this transaction was under the written contract is clear, and this is the only contract under which the plaintiff claims that he was entitled to one-quarter of the commissions

which the defendant should receive.   The defendant himself says that but for an arrangement made between them, by which the plaintiff accepted $60 because of the fact that it was claimed that he did not perform full services, he would have been entitled to $75; that is, to one-quarter of the commissions which the defendant received.   This is a complete recognition on the part of the defendant that his understanding of this contract was that claimed by the plaintiff, and that which the court said to the jury the conduct of the parties showed was what they meant by it.   So that whether it was the duty of the court to take into consideration the evidence and the conduct of the parties and so construe this contract to the jury, or to have instructed the jury properly as to how they should construe it under the evidence, showing how the parties had acted under it, there was no prejudice to the defendant in the court so construing the contract.   It is perfectly clear that the parties themselves understood the contract to mean what the court said their conduct showed they understood it to mean.   There was, therefore, no error to the prejudice of the defendant if what the court said was the true construction of this contract.

Complaint is made also that the court erred in refusing to give certain requests to charge which the defendant made.   The first of these reads:

"The plaintiff is not entitled to recover any commissions unless he has first shown that either the owner or the purchaser or the lessee of the property entered into the transaction as a result of the plaintiff's exclusive effort."

This was properly refused.   It was not necessary that the business should have been transacted by reason of the exclusive efforts of the plaintiff in order to entitle him to a commission.

The second request reads:

"The word, 'commission,' as used in the contract means the percentage which is found by multiplying the amount of the sale or lease by the rate per cent."

There was no error in the court declining to define a word, the meaning of which is perfectly plain to every man who fairly

understands the English language.  The word "commission" which it was asked should be defined, must be presumed to have been understood by the jury.  It might be different if some word had been used which has a technical meaning, and which technical meaning is not generally understood, but there was no more propriety in the court being required to define the word "commission" than there would have been for him to determine the word "salary" or "compensation."

The third request reads:

"One-half of one per cent. commissions, as the phrase is used in the contract, means one-half of one per cent. of the amount obtained by multiplying the amount of the sale or transaction by the rate per cent., which is admitted in this case to be two per cent."

That this was properly refused results from what has already been said as to the charge of the court upon the true construction of the contract entered into by the plaintiff and defendant.

The result is that we do not find any error in the record justifying a reversal and the judgment is affirmed.

---

### WHEN COMMISSION OF AN UNLAWFUL ACT INVALIDATES LIFE INSURANCE.